## BURROUGHS BLDG. MATERIAL CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 8.

Circuit Court of Appeals, Second Circuit.

Jan. 5, 1931.

Donald Horne, of New York City (Louis J. Felstiner, of New York City, of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Morton Poe Fisher, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Frank M. Thompson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The petitioner is a New York corporation which was engaged in dealing in and selling masons' building material to contractors and builders during the year 1921. It entered into an agreement with other dealers to fix the prices at which building materials were to be sold to contractors and builders. For participation in this price-fixing agreement, the petitioner, on February 9, 1921, was indicted for violation of section 341 of the General Business Law of New York (Consol. Laws N. Y. c. 20), pleaded guilty to the indictment, and paid a fine of $2,500 imposed by the Supreme Court of New York. The president of the corporation, because of participation in the price-fixing agreement, was also indicted for violation of section 580 of the Penal Law of New York (Consol. Laws N. Y. c. 40), pleaded guilty and suffered im-

position of a fine of $450 and $60 costs, which the corporation paid on his behalf. The corporation also paid $4,500 to a law firm employed to conduct the defense of itself and its president as counsel fees. In its return for income and profits taxes for the year 1921, the corporation claimed deduction of the foregoing sums aggregating $7,510 as "ordinary and necessary expenses paid during the taxable year in carrying on * * * business." These deductions were disallowed by the Commissioner, who accordingly determined a tax deficiency of $3,591.26. The taxpayer thereupon sought a redetermination of the deficiency by the Board of Tax Appeals. The Board sustained the Commissioner, and, from its order, the present appeal has been taken.

The provisions of the tax law involved are contained in chapter 136 of the Revenue Act of 1921 (42 Stat. 254), and are the following:

"Sec. 234 (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * * *"

■■ The immediate question is whether fines and costs paid by the taxpayer when convicted of price fixing in violation of a statute, and counsel fees paid for its defense, should be regarded as "ordinary and necessary expenses" paid "in carrying on * * * business."

When the question of the right of a taxpayer to deduct somewhat similar items under the British Income Tax Acts was asserted before the Court of Appeal in Inland Revenue Commissioners v. Von Glehn, [1920] 2 K. B. 553, 571, Scrutton, L. J., said:

" * * * It seems to me that the obvious answer is 'Of course he cannot.' But + * * when one comes to state the reasons why that obvious answer should be given perhaps it is not so easy as saying 'Of course he cannot.' "

An attempt to lay down general rules as to what expenses may be allowed in calculating an income tax certainly abounds in difficulties. In Inland Revenue Commissioners v. Von Glehn, supra, penalties and costs of court imposed for an innocent violation of customs laws were held not to constitute "loss * * * connected with or arising out of * * * trade," or "expenses * * * for

the purposes of such trade" within the meaning of the British Income Tax Acts. While the deductions permissible under the British acts were provided for in terms different from those in our own statutes, the courts in both countries have frequently based their conclusions as to deductibility upon the closeness of the relation of the expense to the normal conduct of the business. Thus Warrington, L. J., remarked in Inland Revenue Commissioners v. Von Glehn, supra:

" * * * It cannot be said that this disbursement was made in any way for the purpose of the trade or for the purpose of earning the profits of the trade. It was made ∗ ∗ * because the individuals who were conducting the trade had * * * been guilty of an infraction of the law."

See, also, Inland Revenue Commissioners v. Warnes & Co., [1919] 2 K. B. 444; Ward & Co. v. Commissioners, [1923] A. C. 145. The Supreme Court, in Kornhauser v. United States, 276 U. S. 145, 48 S. Ct. 219, 220, 72 L. Ed. 505, when allowing the deduction of attorneys' fees paid in a suit for an accounting which a taxpayer successfully defended, said that, where a suit against a taxpayer "is directly connected with, or, * * * proximately resulted from, his business, the expense incurred is a business expense within the meaning of section 214(a), subd. 1, of the act."

Justice Sutherland in his opinion cited with approval rulings of the Department allowing as deductions legal expenses incurred by a doctor in defending an action for malpractice, legal expenses incurred in defending an action for damages by a tenant while at work on the taxpayer's farm, and legal expenses in defending a suit for alleged patent infringement.

There are other decisions where expenses seem to have been disallowed because the courts thought it was against public policy to recognize them in any way beneficial to the taxpayer. Thus in Great Northern Ry. Co. v. Commissioner, 40 F.(2d) 372, at page 373, where the question arose whether penalties paid by a railroad for violation of Federal Safety Appliance Acts, Hours of Service Act, Twenty-Eight Hour Live Stock Act, and Customs Regulations might be deducted as business expenses, the Court of Appeals of the Eighth Circuit disallowed them, saying:

" * * * That they arose entirely from unlawful operation, prohibited specifically by statutes or regulations. It cannot be that

Congress intended the carrier should have any advantage, directly or indirectly, or any reduction, directly or indirectly, of these penalties."

So in People ex rel. Konigswald v. Wendell, 198 App. Div. 956, 189 N. Y. S. 550, a loss of $5,000 incurred in horse racing was disallowed because the transaction was against public policy. The decision was affirmed by the Court of Appeals in 233 N. Y. 618, 135 N. E. 942.

It might have been said in Great Northern Ry. Co. v. Commissioner, supra, that fines for violations of regulations such as were there imposed are not infrequent, are inevitable in any large railroad system, and for that reason may reasonably be allowed as "ordinary and necessary" expenses of the business. It is not easy to distinguish such fines from expenditures incurred in connection with actions to recover for negligence or because of patent infringements, unless one draws an arbitrary line between criminal and civil actions even where the criminal actions relate to matters involving no moral turpitude. Undoubtedly expenditures which are in themselves immoral, such as for bribery of public officials to secure protection of an unlawful business would not have to be allowed in order consistently to justify a deduction of fines paid for violations of law involving no moral turpitude and practically inevitable. See United States v. Sullivan, 274 U. S. at page 264, 47 S. Ct. 607, 71 L. Ed. 1037, 51 A. L. R. 1020.

In spite of some inconsistencies in reasoning, two things seem to have been generally held by the courts:

(1) Profits derived from an unlawful business are subject to taxation. United States v. Sullivan, 274 U. S. 259, 47 S. Ct. 607, 71 L. Ed. 1037, 51 A. L. R. 1020; United States v. Yuginovich, 256 U. S. 450, 41 S. Ct. 551, 65 L. Ed. 1043; Steinberg v. United States (C. C. A.) 14 F.(2d) 564; Minister of Finance v. Smith, [1927] A. C. 193.

(2) Fines imposed for violations of law have been held not deductible as expenses of a business, either on the ground that they were avoidable and therefore had no necessary connection with it, or because, on grounds of public policy, they ought not to receive any sanction. Great Northern Ry. Co. v. Commissioner (C. C. A.) 40 F.(2d) 372; Inland Revenue Commissioners v. Von Glehn, [1920] 2 K. B. 553; Inland Revenue Commissioners v. Warnes & Co., [1919] 2 K. B. 444.

The difficulty of making proximate relation of the expenses to a business the test of deductibility is often very considerable. Likewise it is in many cases hard to see why a distinction should be drawn between expenditures arising from the violation of a criminal statute and expenditures occasioned by the breach of a civil obligation. But, whatever reasoning be adopted, it is a fact that both in this country and England fines have not been allowed as business expenses even when they were due either to incidents of the business almost inevitable or to innocent mistakes. Great Northern Ry. Co. v. Commissioner (C. C. A.) 40 F.(2d) 372; and Inland Revenue Commissioners v. Von Glehn, supra. Certainly the violations of law in the last two cases involved no greater moral obliquity than the price-fixing agreement for which the fines were imposed here.

In the circumstances, we are inclined to follow the decisions referred to and to hold that the fines and costs cannot be allowed as deductible expenses. If the fines and costs cannot be deducted, the legal expenses incurred in litigating the question whether the taxpayer violated the law and whether fines should be imposed should naturally fall with the fines themselves.

It may further be said that under our statute the items must be "ordinary and necessary expenses paid * * * in carrying on * * * business," and that the expenses here are in no event such. The record does not show that prosecutions and fines for violations of the New York Anti-Trust Act (Consol. Laws N. Y. c. 20, §§ 340–346) and attorneys' fees paid in connection with the prosecutions were "ordinary and necessary" incidents of the taxpayer's business. Only such expenses may be deducted. It may be argued that they were natural results of such a course of conduct as was pursued, and that to say that they were not "ordinary and necessary" assumes that the business was not done under an unlawful price-fixing agreement, as it in fact was. The disallowance may properly rest on a refusal to sanction expenditures of such a character as we have here on grounds of public policy.

 It may be contended that the items in question, even though not deductible as "ordinary and necessary" expenses, should be allowed the taxpayer as a "loss." Such a contention was disposed of adversely in Kornhauser v. United States, 276 U. S. at page 152, 48 S. Ct. 219, 72 L. Ed. 505, which seems to be conclusive on the point.

The order is affirmed.