HELVERING, Com'r of Internal Revenue, v.
HAMPTON.

No. 7315.

Circuit Court of Appeals, Ninth Circuit.

Sept. 11, 1935.

Frank J. Wideman, Asst. U. S. Atty. Gen., and Sewall Key, Harry Marselli, and Frederick W. Dewart, Sp. Assts. to the Atty. Gen., for petitioner.

Claude I. Parker, John B. Milliken, and Bayley Kohlmeier, all of Los Angeles, Cal. (Llewellyn A. Luce, of Washington, D. C., of counsel), for respondent.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

DENMAN, Circuit Judge.

The Commissioner of Internal Revenue, petitioner herein, seeks a review of that portion of an order of the United States Board of Tax Appeals which determined that there was no deficiency for the year 1922 in the income return of William E. Hampton, hereinafter called the taxpayer, former husband and joint tenant of the respondent. The Board's determination was based on a deduction allowed in computing a net loss for the tax year 1921, carried forward into the year 1922.

The deduction was for the amount paid in settlement of a judgment against taxpayer and in favor of a lessee upon the cancellation of a lease for fraud in a prior tax year in negotiating for the lease and for other expenditures claimed by the appellant to have been made in defense of the suit.

The only evidence received below and in the record here is of the judgment and findings and conclusions on which it is based. The total amount of the judgment was deducted, and no finding made by the Board of the items of the specific amounts of taxes, interest on rentals, etc., for which restitution was required to be made to the lessee as shown in the findings of fact. Appellant admits that $211,-200 of the amount of the judgment, being for rentals restored, was properly deducted, in view of the fact that the government had taxed these rentals during the years in which they were received. As to the remaining items of the restitution, five in number, appellant's assignments of error contend that the Board should have found the items specifically and disallowed each. In view of our conclusion that the Board correctly allowed the entire amount of the judgment as a deduction, we hold that these assignments of error are not well taken.

■ Appellant also assigns error in allowing a deduction for the attorneys' fees and costs claimed by appellant to have been disbursed in defending the suit for rescission, but since the record does not bring before us the evidence taken with regard to the alleged attorneys' fees and costs, so claimed to have been made, we cannot consider this assignment. Tricou v. Helvering (C. C. A. 9th) 68 F.(2d) 280.

■ The remaining assignments raise the question whether the judgment in its entirety should be deducted. Appellant agrees that the taxpayer was engaged in the business of buying, selling, and leasing properties, and his argument here shows that, had the judgment for cancellation been for mutual mistake in the execution of a lease by the taxpayer real estate dealer, the allowance of the deduction for the year of payment 1921 would have unquestionably been proper under Treasury Regulations under the Act of 1921, article III, as follows: "* * * Judgments or other binding adjudication, such as decisions of referees and boards of review under workmen's compensation laws, on account of damages for patent infringement, personal injuries, or other cause, are deductible from gross income when the claim is so adjudicated or paid, * * *."

The fact that a lawsuit is rare in the course of a business does not make its cost the less an "ordinary and necessary expense" deductible under section 214 (a) (1) of the Revenue Act of 1921 (42 Stat. 239). Welch v. Helvering, 290 U. S. 111, 114, 54 S. Ct. 8, 78 L. Ed. 212.

■■ However, the rescission in this case was based on the fraud of the taxpayer in a prior tax year in procuring lessee as a tenant and resulted in the payment of the judgment of restitution in 1921 of damages suffered by the lessee from taxpayer's prior wrong. The question for our decision is whether such a payment in restitution for a prior wrong is allowable as a deduction for the year in which the restitution is made. The pertinent provisions of the Revenue Act of 1921, c. 136, 42 Stat. 227, 239, is as follows:

"Deductions Allowed Individuals.

"Sec. 214. (a) That in computing net income there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."

The Commissioner's argument ignores the element of restitution for a past wrongdoing in the course of a business and asks us to treat the portion of the repayment which was not taxed in prior years as something to be condemned as against public morals. Just how appellant's admitted purification by taxation of the $211,200 of repaid rentals is justified within the theory of his brief is not explained, and we need not enter that realm of ethical speculation. It is true that the restitution here made was not voluntary, and hence not an act of positive good morals, but it certainly was not immoral. Nonmoral would be the proper characterization, and we hold that we cannot differentiate such a payment from that caused by any litigation in the course of business such as is referred to in Welch v. Helvering, supra.

The Commissioner cites the following decisions as requiring the disallowance of the untaxed balance of the judgment: Burroughs Bldg. Material Co. v. Commissioner (C. C. A.) 47 F.(2d) 178; Chicago, etc., R. Co. v. Commissioner (C. C. A.) 47 F.(2d) 990, 991; Great Northern R. Co. v. Commissioner (C. C. A.) 40 F.(2d) 372, 373; Tunnel R. R. v. Commissioner (C. C. A.) 61 F.(2d) 166, 173. In all of the above tax cases the allowance of the claimed deduction is refused because it consists of a fine for violating governmental statutes or regulations or legal expenditure in defense of prosecutions for such offenses. The basis of these decisions is that the taxpayer, in offending the state or federal government, is engaged in a transaction which governmental policy forbids being considered as a part of the business. There is no analogy between payment of a fine for a public offense and the restitution by a real estate dealer of the gains made in a prior tax year by his tortious conduct in a private transaction in the course of his business.

Even if restitution for wrong in a private business transaction were regarded as infected by the wrong it seeks to cure, there are no decisions holding that a deduction for the amount restored should be denied. On the contrary, the Treas-

ury Department itself, in ruling on the right of deduction for expenses incurred in the defense of a charge of tortious or other actionable conduct in the course of business, makes no distinction between a successful and an unsuccessful defense of a charge of wrongdoing. The Department's solicitor's opinion, published in C. B., V–1, 226, states the ruling as follows:

"Inquiry is made whether a deduction of x dollars may be taken by A for legal expenses incurred by him in 1923 in defending a suit for malpractice.

"The deductibility of expenses of this character depends on whether they constitute ordinary and necessary expenses incurred by the taxpayer in carrying on his trade or business.

"It appears that the taxpayer is engaged in the practice of medicine. The action in the defense of which the expenses in question were incurred was a personal one brought by one or more persons whom the taxpayer treated in the course of his business, and was based on acts performed in the course of this treatment. Under the circumstances, expenses incurred by the taxpayer in defending himself were just as much ordinary and necessary business expenses as would be expenses incurred by a merchant in defending an action for personal injuries caused by one of his delivery automobiles. In the latter case it is believed the deduction would be allowed without question.

"*There is no analogy between expenses of the kind here involved and those incurred by one accused of a crime. A suit for damages against a lawyer or doctor by a client or patient arises directly out of the business or profession of such lawyer or doctor. A criminal action against a druggist for violation of the narcotic laws has no direct connection with the druggist's business. If the druggist, on the other hand, were sued for damages by reason of having improperly filled a prescription, the action would arise directly out of the business.*

"In view of the foregoing, it is held that the expenses in question are so directly connected with the taxpayer's business as to warrant their deduction as ordinary and necessary expenses incurred in a trade or business."

The solicitor's opinion is cited with approval by the Supreme Court, as well as other departmental rulings described as follows:

"Another departmental ruling is to the effect that legal expenses incurred in defending an action for damages by a tenant injured while at work on the taxpayer's farm are deductible as a business expense. C. B. 5, p. 121.

"In the Appeal of F. Meyer & Brother Co., 4 B. T. A. 481, the Board of Tax Appeals held that a legal expenditure made in defending a suit for an accounting and damages resulting from an alleged patent infringement was deductible as a business expense." Kornhauser v. U. S., 276 U. S. 145, 153, 48 S. Ct. 219, 220, 72 L. Ed. 505.

In none of these rulings is it suggested that if the defendant in a civil suit charging medical malpractice, or tortiously wounding a person, or infringing a patent, is unsuccessful, the private wrongdoing so adjudged infects the payment for its defense. On the contrary, the italicized portion of the solicitor's opinion shows that the distinction it makes is between the defense of offenses *against the government*, of which governmental policy prohibits consideration as ordinary incidents of a business, and defending *private wrongdoing* in the course of business, the cost of which is ruled deductible.

When we consider the difficulties of administering the law under a principle requiring the taxing officials to determine in every settlement made for an alleged business tort, the question whether it involved unethical conduct on the part of the business man or company seeking the deduction, it is difficult to believe that Congress could have intended such an interpretation of the act. Was the taxpayer driving the car sufficiently intoxicated at the moment of the collision—or, was the defective condition of taxpayer's falling elevator due to mere negligence or sufficiently gross misconduct—or, did the taxpayer surgeon use his scalpel in an operation with which he was sufficiently inexperienced—to warrant a finding of moral turpitude? Numberless such questions would arise, impracticable of solution by the investigators and agents of the Treasury.

We cannot agree that private wrongdoing in the course of business is extraordinary within the meaning of the taxing statute allowing deductions for "or-

dinary and necessary expenses." The statute itself makes no such exception, and since it is construable as we have interpreted it, that construction against the collector is required by the long-established rule of interpretation in taxing statutes. Miller v. Standard Nut Margarine Co., 284 U. S. 498, 508, 52 S. Ct. 260, 76 L. Ed. 422.

In the instant case we hold that, even if unethical conduct in business were extraordinary, restitution therefor is ordinarily expected to be made from the person in the course of whose business the wrong was committed. It is therefore deductible under § 214 (a) (1).

Affirmed.